## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

HENRY LEE BROWN,

        Petitioner,

vs.                                 Case No.:   3:14-cv-1241-J-34JBT
                                                            3:10-cr-282-J-34JBT

UNITED STATES OF AMERICA,

        Respondent.

_____/

## <u>ORDER</u>

This case is before the Court on Petitioner Henry Lee Brown's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Doc. 1, Motion to Vacate).[1]  The United States filed a response on January 19, 2015. (Doc. 4, Response).  Brown filed a reply on January 30, 2015.  (Doc. 7, Reply).  Brown timely filed the Motion to Vacate.

Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and determines that an evidentiary hearing is not necessary to resolve the merits of this action. <u>See</u> <u>Aron v. United States</u>, 291 F.3d 708, 714–15 (11th Cir. 2002) (an evidentiary hearing on a § 2255 petition is not required when the petitioner asserts allegations that are

---

[1]     Citations to the record in the underlying criminal case, <u>United States of America vs. Henry Lee Brown</u>, 3:10-cr-282-J-34JBT, will be denoted as "Crim. Doc. __."  Citations to the civil § 2255 case, Case No. 3:14-cv-1241-J-34JBT, will be denoted as "Doc. __."

[2]     Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before deciding on a § 2255 motion.

affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (concluding that a petitioner's ineffective assistance claim can be dismissed without an evidentiary hearing when the petitioner alleges facts that, even if true, would not entitle him to relief); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) ("On habeas a federal district court need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel."); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[3]  For the reasons set forth below, Brown's Motion to Vacate is due to be denied.

## I.    Background

Law enforcement arrested Brown and a co-defendant, Michael Hopkins, in April 2010 after they attempted to acquire four kilograms of cocaine from an informant with the Drug Enforcement Administration (DEA).  (See Crim. Doc. 1, Complaint; Crim. Doc. 2, Arrest of Henry Lee Brown).  Brown retained counsel, William Mallory Kent (see Crim. Doc. 6, Minute Entry for Apr. 12, 2010), and began cooperating with the DEA.  At Brown's request, the government withheld seeking an indictment while Brown attempted to cooperate in the investigation of other persons.  (See Crim. Doc. 156, USA's Opposition to Substantial Assistance Motion at 2).  Initially, Brown intended to waive his right to be

---

[3]    Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point.  Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007.  Fed. R. App. P. 32.1(a).

indicted by a grand jury and enter a negotiated guilty plea to a charge filed by information.
Id.; (see also Crim. Doc. 178, Trial Transcript Volume II at 98-102).[4]  Over time, however,
Brown came to believe that due to his cooperation, the government should not charge
him with any felony offense.   See Response at 2; USA's Opposition to Substantial
Assistance Motion at 2; Trial Tr. Vol. II at 100-01.   The government disagreed.   USA's
Opposition to Substantial Assistance Motion at 2 ("For obvious reasons, such a resolution
was unacceptable to the government.").   As a result, in March 2011, Brown ceased his
cooperation efforts and refused to sign a plea agreement.   See Response at 2; USA's
Opposition to Substantial Assistance Motion at 2.

After Brown's cooperation efforts broke down, a grand jury returned a three-count
superseding indictment charging Brown with:   (1) conspiracy to possess with intent to
distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(B) and
846; (2) attempted possession with intent to distribute 500 grams or more of cocaine, in
violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); and (3) possession of a firearm in
furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).   (Crim.
Doc. 57, Superseding Indictment).   The grand jury returned the Superseding Indictment
on May 11, 2011.

On or around May 18, 2011, Brown retained a new attorney, David Fussell, and
entered a plea of not guilty to the charges.   (Crim. Doc. 64, Minute Entry for May 18,
2011).   About three months later, Victor Martinez, who would later represent Brown at
trial, filed a notice of appearance as co-counsel.   (Crim. Doc. 79, Martinez Notice of
Appearance).   Two and a half weeks after Martinez's appearance, Fussell moved to

---

[4]        Hereafter, citations to trial transcripts will be denoted as "Trial Tr. Vol. __."

withdraw because Martinez was prepared to represent Brown without assistance.  (Crim. Doc. 104, Motion to Withdraw).  After a hearing on the matter, the Court granted Fussell's motion to withdraw.  (<u>See</u> Crim. Doc. 106, Minute Entry for Sept. 13, 2011).

With Martinez as his trial counsel, Brown proceeded to a jury trial, where he asserted an entrapment defense.  The jury did not accept the defense, and found Brown guilty of all three charges in the Superseding Indictment.  (Crim. Doc. 124, Jury Verdict).

After the trial, Brown moved to compel the government to file a substantial assistance motion.  (Crim. Doc. 154, Motion to Compel).  Brown contended that the government was improperly withholding a substantial assistance motion to penalize him for exercising the right to go to trial.  <u>Id.</u>  The government countered that the reason it refused to file a substantial assistance motion was that "Brown's cooperation was not complete and truthful, and thus not deserving of a substantial assistance motion."  USA's Opposition to Substantial Assistance Motion at 4-5; (<u>see also</u> Crim. Doc. 180, Sentencing Transcript at 62-74).[5]  The government further argued that it never promised to file a substantial assistance motion; it merely agreed to consider filing one.  USA's Opposition to Substantial Assistance Motion at 5.  At Brown's sentencing hearing, the Court denied his Motion to Compel the government to file a substantial assistance motion.  Sentencing Tr. at 75-82.  In doing so, the Court rejected Brown's argument that the government withheld a substantial assistance motion to penalize Brown for going to trial.  <u>Id.</u> at 78-82. Instead, the Court accepted the government's position that it refused to file a substantial assistance motion because Brown gave false testimony at trial.  <u>Id.</u> at 80-81.  Ultimately, the Court sentenced Brown to concurrent terms of 70 months in prison as to Counts One

---

[5]      Hereafter, citations to the Sentencing Transcript will be denoted "Sentencing Tr. at __."

and Two, id. at 94, which was significantly below his advisory range of 121 to 151 months as to those counts under the United States Sentencing Guidelines ("Guidelines"), see id. at 28.  The Court also imposed a mandatory minimum consecutive term of 60 months as to Count Three, yielding a total term of imprisonment of 130 months.  Id. at 94-95.

Brown filed a timely appeal, arguing that the Court erred by not holding an evidentiary hearing on his motion to compel the government to file a substantial assistance motion.  The Eleventh Circuit Court of Appeals rejected the argument and affirmed Brown's conviction and sentence.  United States v. Brown, 521 F. App'x 778, 780-82 (11th Cir. 2013).  Brown petitioned the Supreme Court for a writ of certiorari, but the Supreme Court denied his request on October 15, 2013.  Brown v. United States, 134 S. Ct. 453 (2013).  Brown timely filed the instant Motion to Vacate on October 14, 2014.

## II.   Discussion

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence.  Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack.  28 U.S.C §2255(a) (2008).  Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack.  United States v. Addonizio, 442 U.S. 178, 184-86 (1979). A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective

assistance of counsel is normally considered in a collateral attack. United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

As with any Sixth Amendment ineffective assistance of counsel claim, a § 2255 petitioner must demonstrate both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that his counsel's deficient performance sufficiently prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994).   In determining whether the petitioner has satisfied the first requirement, i.e. that counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks, 26 F.3d at 1036.   The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." Id. To satisfy the second requirement, that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.   Id. at 1036-37 (citing Strickland, 466 U.S. at 694).   In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Strickland, 466 U.S. at 695.   However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

**A. Ground One:   Whether counsel gave ineffective assistance by advising Brown to decline the government's plea offer and proceed to trial on the entrapment defense**

As his first ground for relief, Brown contends that his third attorney, Victor Martinez, gave ineffective assistance by advising Brown to decline a plea offer and proceed to trial on an entrapment defense.  Motion to Vacate at 4-8.  According to Brown, the government extended a written plea offer to him in January 2011, when he was represented by his first attorney, William Mallory Kent.  The offer required Brown to cooperate with the government, and in exchange it would have allowed Brown to plead guilty only to conspiracy to distribute 500 grams or more of cocaine, resulting in a presumptive advisory Guidelines range of 70 to 87 months, and relieving him of the potential for a mandatory consecutive 60 month sentence for the possession of a firearm in furtherance of a drug trafficking offense.  Id. at 5.  The proposed plea agreement also contained a provision whereby the government would consider filing a motion recognizing Brown's substantial assistance and advocating for a reduction of his advisory Guidelines.  Id. at 6.  Brown acknowledges that his second attorney, David Fussell, advised him to accept the plea offer.  Id. at 6, 7.[6]   In Brown's version of events, he was prepared to accept the offer until he sought a "second"[7] opinion from Martinez, who allegedly persuaded Brown that he could win at trial on an entrapment defense.  See id. at 6-7.  Brown alleges that he gave Martinez his discovery materials, and that after reviewing the discovery, Martinez advised Brown that one of the government's confidential informants, "Shorty," had entrapped him.

---

[6]      Brown omits the fact that his first attorney, Kent, also advised him to accept the plea offer. See Sentencing Tr. at 65.

[7]      In truth, this was the third opinion Brown sought out, considering that both Kent and Fussell had already advised Brown to accept the plea offer.

Id. at 6-7, ¶¶ 9-11.   According to Brown, Martinez "boasted" that he had successfully argued entrapment defenses in two other cases.[8]   Brown alleges that Martinez inflated his confidence in an entrapment defense, thereby inducing him to go to trial.   As the smoking gun, Brown points to a statement Martinez made at the sentencing hearing, where Martinez remarked:   "[A]n entrapment defense is an inherently difficult affirmative defense to prevail upon, okay?   You could have a hundred entrapment cases go to trial, and it may very well be that none of them come back with a not guilty."   Id. at 8 (quoting Sentencing Tr. at 18).   Brown claims that "[t]his was the first time Mr. Brown learned of Mr. Martinez's opinion that entrapment is an inherently difficult defense to prevail upon." Id.   In support of his contentions, Brown also submits the affidavits of two personal acquaintances, Natika Jackson and Verhonda Williams, who assert that Brown intended to plead guilty, but that Martinez persuaded Brown to go to trial on the entrapment defense.  Motion to Vacate at 15-17.

As a result of Martinez's alleged ineffectiveness, Brown claims that he suffered prejudice in three ways:   (1) Brown was convicted of three offenses instead of one; (2) the 130-month sentence that Brown received exceeded the high end of the presumptive guidelines range (87 months) had he accepted the government's plea offer; and (3) Brown lost the benefit of a substantial assistance motion.  Id. at 4.

---

[8]    Those cases purportedly were United States v. Sanchez, Case No. 8:11-cr-7-T-33AEP (M.D. Fla. 2011), and "United States v. Sistrunk," Case No. 08-21148-Cr-DMM (as cited in the affidavit of Verhonda K. Williams, Doc. 1-2 at ¶ 6).  The docket in the Sanchez case reflects that Martinez did represent the defendant, and Martinez did obtain an acquittal at trial.  (Case No. 8:11-cr-7-T-33AEP, Doc. 41, Judgment of Acquittal, Doc. 42, Jury Verdict).  The "Sistrunk" case has an irregular case number, and the Court has been unable to locate it.  Notably, Brown failed to provide either the docket for the case or any relevant documents from it.

In response to the Motion to Vacate, the government asserts that the trial record refutes Brown's version of events.  Response at 8-15.  According to the government, the record affirmatively "reflects that Brown essentially fired two lawyers for the sole purpose of hiring a lawyer who would proceed to trial (as Brown desired)."  Id. at 8.  The government contends that Brown, who had served in the Army, been certified as a corrections officer, and owned a business, would not "blindly follow legal advice or be duped by a lawyer who simply desired to try a case."  Id.  To the contrary, Brown rejected the advice of his first two lawyers, Kent and Fussell, who both recommended that Brown accept the government's plea offer.  Id. at 9-10 (citing Sentencing Tr. at 65, 93).  The government asserts that Brown refused to plead guilty and insisted on going to trial because he felt he should not have to plead guilty to any felony offense.  Id. at 12; accord Trial Tr. Vol. II at 98-102.  As such, the government contends that Brown cannot demonstrate prejudice under Lafler v. Cooper, 132 S. Ct. 1376 (2012), Missouri v. Frye, 132 S. Ct. 1399 (2012), and Osley v. United States, 751 F.3d 1214, 1222-23 (11th Cir. 2014), because there is not a reasonable probability Brown would have accepted the plea offer but for Martinez's advice, given that Brown repeatedly rejected the offer over the advice of two other lawyers.  Response at 12-14.[9]

"Defendants have a right to the effective assistance of counsel, a right that extends to the plea bargaining process."  Lafler, 132 S. Ct. at 1384 (citing Frye, 132 S. Ct. at 1386-87).  Defendants are thus "entitled to the effective assistance of competent counsel" during plea negotiations.  Id. (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).

---

[9]     At the sentencing hearing, the government predicted that Brown would file a motion to vacate attempting to blame the outcome on Martinez.  Sentencing Tr. at 65, 86.

As such, Strickland's two-part test "applies to challenges to guilty pleas based on ineffective assistance of counsel." Hill v. Lockhart, 474 U.S. 52, 58 (1985).

Strickland's performance prong requires a petitioner to show that counsel's representation during the plea bargaining process fell below an objective standard of reasonableness. Id. at 57. In considering a claim of ineffective assistance, a court "must take care to 'eliminate the distorting effects of hindsight' when evaluating an attorney's performance, 'and [we] evaluate the conduct from counsel's perspective at the time.'" Mostowicz v. United States, 625 F. App'x 489, 493 (quoting Strickland, 466 U.S. at 689). "Counsel's competence ... is presumed, and the defendant must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." Kimmelman v. Morrison, 477 U.S. 365, 384 (1986) (emphasis added, internal citation omitted). Importantly, trial counsel's decisions about which defenses to pursue are decisions of strategy, Stanley v. Zant, 697 F.2d 955, 964 (11th Cir. 1983), and a court presumes that strategic decisions are reasonable, Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000).

With respect to the prejudice prong, where a petitioner alleges that ineffective assistance led to the improvident rejection of a plea offer, the test is whether

> but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that were in fact imposed.

Lafler, 132 S. Ct. at 1385. See also Osley, 751 F.3d at 1222.

Upon review of the record, the Court determines that Brown cannot satisfy either the performance prong or the prejudice prong of Strickland's test.  First, Brown cannot show that Martinez's advice that he proceed to trial on an entrapment defense was objectively unreasonable.  The decision to present an entrapment defense is quintessentially a strategic one, and as such, it is entitled to a presumption of reasonableness.  See Chandler, 218 F.3d at 1314; Stanley, 697 F.2d at 964.  In his Motion to Vacate, Brown fails to allege how Martinez's advice was objectively unreasonable, such as whether Martinez overlooked a rule, case law, or other authority clearly foreclosing Brown's entrapment defense, or whether Martinez's investigation unreasonably missed a critical fact that was fatal to the defense.  To the contrary, Brown's Motion to Vacate reflects that Martinez reviewed the discovery materials, and upon completing his review concluded and advised Brown that he had a viable entrapment defense.  See Motion to Vacate at 6-7, ¶¶ 9-10; see also Crim. Doc. 104, Fussell's Motion to Withdraw at 1-2 (stating that "Mr. Martinez related that he reviewed the discovery thoroughly prior to being retained.").  Thus, Brown's own Motion to Vacate, together with the record, reflect that Martinez studied the evidence before reaching a strategic decision on how to proceed.

In his Motion to Vacate, Brown appears to accuse Martinez of failing to advise him about the subjective likelihood, or "inherent[ ] difficult[y]," of succeeding on an entrapment defense, see id. at 4, 8, but Brown provides few specifics suggesting how or why Martinez's advice to proceed on an entrapment defense was objectively unreasonable, see id. at 4-8.[10]  The standard for evaluating the reasonableness of counsel's

_____

[10]   Notably, Brown, who once was certified as a law enforcement officer, would not have been ignorant of the reality that entrapment would be a difficult defense on which to prevail at trial.  As

performance is an <u>objective</u> one.  <u>Chandler</u>, 218 F.3d at 1315-16 (citations omitted). Thus, a petitioner must show "that no competent counsel would have taken the action that his counsel did take." <u>Id.</u> at 1315.  Here, neither Brown's Motion to Vacate nor the record support a conclusion that <u>no</u> reasonable lawyer would have advised Brown to proceed to trial on an entrapment defense.

The trial record reflects that although Brown's entrapment theory ultimately did not persuade the jury, it was not manifestly unreasonable.  To assert an entrapment defense a defendant must present evidence that the government induced the defendant to commit the crime.  <u>United States v. Isnadin</u>, 742 F.3d 1278, 1297 (11th Cir. 2014) (citations omitted).  The defendant merely bears the burden of production, not the burden of proof as to this issue. <u>Id.</u> (citing <u>In re Winship</u>, 397 U.S. 358, 364 (1970)).  The defendant need only "produce any evidence sufficient to raise a jury issue 'that the [G]overnment's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it.'" <u>Id.</u> (quoting <u>United States v. Andrews</u>, 765 F.2d 1491, 1499 (11th Cir. 1985)).  Thus, a defendant's burden on the first element of the entrapment defense is not especially onerous.  At trial, the jury heard unrebutted testimony that "Shorty" (the confidential informant whom Martinez argued entrapped Brown) initiated contact with Brown to discuss a drug transaction, that "Shorty" aggressively and repeatedly tried to contact Brown to discuss a drug deal, and that Brown was under

---

Brown's sentencing counsel, Curtis Fallgatter, and the Eleventh Circuit have noted, an entrapment defense inherently involves admitting to the offense conduct.  Motion to Compel at 3, ¶ 6; <u>United States v. Blanton</u>, 793 F.2d 1553, 1564 (11th Cir. 1986) ("[E]ntrapment is an affirmative defense, which ordinarily requires admitting that one engaged in the alleged acts.") (internal citation omitted).  Indeed, Brown's testimony involved "quasi-admitt[ing] the offense conduct" when he testified at trial.  Response at 12; <u>accord</u> Trial Tr. Vol. II at 124-38.  Given that an entrapment defense involves admitting to committing the offense conduct, Brown undoubtedly was aware of the danger and difficulty in proceeding on such a defense.

financial duress at the time "Shorty" was contacting him.  <u>See</u> Trial Tr. Vol. II at 123-29.[11]

Knowing that this would be the evidence at trial, a lawyer operating within the broad range

of professionally competent assistance could have argued that the government's

confidential informant induced Brown, especially in light of the modest burden for

establishing the first prong of an entrapment defense.  <u>See</u> <u>Strickland</u>, 466 U.S. at 690.

Where a defendant produces sufficient evidence of inducement, the burden shifts

to the government to prove beyond a reasonable doubt that the defendant was

predisposed to commit the crime.  <u>Isnadin</u>, 742 F.3d at 1297.  Given Brown's background

and characteristics, counsel reasonably could have concluded that Brown had a good

argument that he was not predisposed to dealing in cocaine.  Brown graduated from high

school, served five years in the Army before being honorably discharged with the rank of

sergeant, held gainful employment for several years as a law enforcement officer and as

the owner of a lawn care business, <u>see</u> Trial Tr. Vol. II at 115-21, and importantly, had no

prior drug convictions, or any adult convictions at all (Crim. Doc. 197, Probation

Memorandum at ¶¶ 42-48).[12]  Given this record, counsel reasonably could have

concluded that Brown had persuasive evidence that he was not predisposed to commit

the offense.  As such, it was not outside the broad range of reasonableness for counsel

---

[11]  There was ample evidence that subsequently, Brown was eager to negotiate a drug transaction, <u>e.g.</u>, <u>id.</u> at 173-94, but there is no suggestion that Martinez was ignorant of the evidence when he advised Brown as to trial strategy.  Even in light of the incriminating evidence, the Court cannot say that it was objectively unreasonable for Martinez to argue that "Shorty" entrapped Brown.  Brown "must establish that no competent counsel would have taken the action that his counsel did take," <u>Chandler</u>, 218 F.3d at 1315, that is, pursue an entrapment defense. Brown still has not made that showing here.

[12]  The Court also alluded to these factors when it decided to vary significantly downward from Brown's guidelines range.  <u>See</u> Sentencing Tr. at 96-97.

to advise Brown that he had a viable entrapment defense, despite the fact that in the end that defense proved unsuccessful.   "We must avoid second-guessing counsel's performance: '[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance.' Waters, 46 F.3d at 1522 (en banc).[13]   Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness."   Chandler, 218 F.3d at 1314 (internal footnote omitted).

Brown also suggests that Martinez lied to him about having succeeded on the entrapment defense in other cases.   In support of this contention, Brown attached an affidavit from Verhonda K. Williams to his Motion to Vacate.   See Motion to Vacate at 16-17.   In the affidavit, Williams states:

> Attorney Martinez also referenced two cases that had similar facts where he stated that he was successful is [sic] both excluding testimony from an unavailable confidential informant and the entrapment defense.   The two cases referenced were USA v. Sanchez (8:11-CR-7-T-33AEP) and USA v. Sistrunk (08-21148-CR-DMM) where Attorney Martinez was not successful in either of his arguments.   Cases attached as exhibit A and exhibit B.[14]

Id. at 16, ¶ 6.   Brown failed to attach any exhibit to the affidavit.   Although the government located the docket for the Sanchez case, it was unable to locate any docket matching the irregular case number for the "Sistrunk" case.   See Response at 11-12.

With respect to United States v. Sanchez, Case No. 8:11-cr-7-T-33AEP (M.D. Fla. 2011), it appears that Williams's affidavit inaccurately accuses Martinez of lying about presenting a successful defense.   The docket reflects that Martinez represented the

---

13      Waters v. Thomas, 46 F.3d 1506 (11th Cir. 1995).

14      Neither case was attached as an exhibit to the affidavit.

14

defendant, Mario Alberto Sanchez, and that the defendant was in fact acquitted of all charges.  (Case No. 8:11-cr-7-T-33AEP, Doc. 41, Judgment of Acquittal; Doc. 42, Jury Verdict).  Thus, contrary to what Brown suggests, it does not seem that Martinez lied about having previously obtained an acquittal, at least with respect to the <u>Sanchez</u> case. Therefore, to the extent that Brown's claim of ineffective assistance is based on the allegation that Martinez lied to him about successfully defending other clients, the <u>Sanchez</u> docket affirmatively refutes that allegation, because it establishes that Martinez did, in fact, obtain an acquittal for his client.

Although the trial record affirmatively refutes the allegation that Martinez performed in an objectively unreasonable manner by advising Brown to proceed on an entrapment defense, the Court further observes that even if Martinez's advice had been deficient, the record conclusively shows that Brown did not suffer prejudice.  Upon review of the record, the Court concludes that Brown has failed to present evidence of any reasonable probability that he would have accepted the government's plea offer, even had Martinez advised him to accept it.  Rather, the record establishes that once Brown realized the government was unwilling to let him walk away without pleading guilty to a felony charge, he was unwilling to accept the government's plea offer, and was determined to go to trial. Even had Martinez advised Brown to accept the offer, Brown would have fired Martinez and continued shopping for a lawyer who would try the case, just as he fired the other two lawyers who advised him to accept the plea offer, or Brown would have insisted that Martinez proceed to trial.

The evidence presented at trial, as well as statements from the sentencing hearing, which are unrefuted, establish that Brown thought he should not be charged with any

felony offenses due to his cooperation, that he was dissatisfied with the government's plea offer, and that he was unwilling to plead guilty to a felony offense. See, e.g., Trial Tr. Vol. II at 98-102; Sentencing Tr. at 48, 61-66, 68-69, 86. At trial, DEA Special Agent Troy Eliason testified that Brown became upset when the government would not give him the plea agreement that he wanted, which would be to allow Brown to walk away without any felony convictions. Trial Tr. Vol. II at 100-01. Eliason testified that Brown was unwilling to accept having a felony conviction on his record because he was concerned it would compromise his ability to get contracts for his lawn care business. Id. at 101. Eliason's testimony comports with the fact that Brown had no prior felony convictions, as well as with Brown's testimony that his lawn care business received a lucrative contract from the Florida Department of Law Enforcement (FDLE), id. at 119, 144, which Brown likely feared would not be renewed if he was a convicted felon. Additionally, at the sentencing hearing the prosecutor observed that both he and Brown's first two attorneys, Kent and Fussell, each advised Brown to accept the government's plea offer, Sentencing Tr. at 65, but Brown rejected their advice (as shown by the fact he went to trial). The prosecutor recalled that Brown was unwilling to plead guilty to any felony offense, and that Brown ceased his cooperation efforts once he realized that he would have to plead guilty to a felony. Id. at 68-69. Indeed, the prosecutor predicted that Brown would later try to blame Martinez for the outcome of his case, id. at 65-66, 86, but stated that it was Brown's own decision to contest the charges, see id. at 86. Notably, Brown's counsel at the sentencing phase, Curtis Fallgatter (Brown's fourth attorney), did not dispute the prosecutor's statement that Brown was unwilling to plead guilty to a felony, and acknowledged that Brown wanted the government to drop all the charges. In fact,

Fallgatter further defended Brown's demand that the government drop the charges as reasonable in light of his cooperation efforts.  Id. at 48.  Given the opportunity to speak, Brown did not contest any of the statements made at the sentencing hearing.  Id. at 93.

The record, together with the Motion to Vacate, therefore establish the following facts:  (1) the government extended a plea offer to Brown on January 31, 2011, while Brown was represented by his first attorney, William Mallory Kent, Motion to Vacate at 5, ¶ 4; Sentencing Tr. at 60; (2) Kent advised Brown to accept the plea offer, Sentencing Tr. at 65, but Brown rejected that advice (months before Brown even consulted Martinez); (3) Brown fired Kent in favor of hiring David Fussell (see Crim. Doc. 41, Fussell's Notice of Appearance; Crim. Doc. 42, Joint Motion for Substitution of Counsel); (4) Brown's second attorney, David Fussell, also advised Brown to accept the plea offer in April 2011, Motion to Vacate at 6, ¶ 5 and 7, ¶ 13; Sentencing Tr. at 65, but Brown rejected Fussell's advice as well, (5) Brown fired Fussell in favor of hiring Martinez to try the case (see Crim. Doc. 79, Martinez's Notice of Appearance; Crim. Doc. 104, Fussell's Motion to Withdraw); (6) Brown was dissatisfied with the government's plea offer because he was unwilling to plead guilty to any felony offense, e.g., Trial Tr. Vol. II at 98-102; Sentencing Tr. at 68-69; and (7) Brown made his own decision to exercise his constitutional right to go to trial and testify, see Trial Tr. Vol. II at 115-97 (Brown's trial testimony); Sentencing Tr. at 86.

While Brown claims he was ready to accept the plea offer until Martinez persuaded him he had a good entrapment defense, Motion to Vacate at 6, the Court finds this claim to be refuted by the record in this action.[15]  The record reflects that Brown, an educated individual with military, law enforcement, and business experience, had months to

---

[15]    The Court also notes that it has previously found that Brown committed perjury by giving false testimony at trial while under oath.  (See Sentencing Tr. at 80-81).

consider the government's plea offer; that he repeatedly declined to accept the offer, including before he even consulted Martinez; that Brown found the government's plea offer unacceptable because he was unwilling to plead guilty to any felony offenses, which he feared would jeopardize his business prospects; and that Brown was determined to go to trial – which he had every right to do.  With the clarity of hindsight, Brown may regret his decision to reject the plea offer, but he cannot blame Martinez now for that choice. Cf. Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 765 (11th Cir. 2010) (in rejecting ineffective assistance claim: "What Allen does not have is the right to escape the consequences of his own decision not to present any mitigating circumstances evidence by shifting the blame for it to someone else.")   The record shows that Brown was determined to avoid a felony conviction, and as such, he had no intention of accepting the government's plea offer because the government's offer required Brown to plead guilty to a felony offense.  Brown fired the two lawyers who advised him to accept the plea offer, he shopped for a lawyer who would take his case to trial, and he found that lawyer in Martinez.  Brown made his own informed decision to go to trial, and he lost.

In light of the foregoing, the Court concludes that Brown has failed to show any reasonable probability that Brown would have accepted the government's plea offer but for Martinez's advice.   Therefore, he cannot satisfy the first component of Lafler's prejudice analysis, which requires the petitioner to demonstrate a reasonable likelihood that the defendant would have accepted the plea offer, such that it would have been presented to the court.   Lafler, 132 S. Ct. at 1385; see also Osley, 751 F.3d at 1222. Accordingly, relief on Ground One is due to be denied.

**B. Ground Two:   Whether counsel gave ineffective assistance by not advising Brown that if he proceeded to trial, the government would not file a substantial assistance motion**

As his second ground for relief, Brown asserts that Martinez gave ineffective assistance by "fail[ing] to advise Brown that if he went to trial and testified, the government would likely decline to file a substantial assistance motion."  Motion to Vacate at 8.  Like his claim in Ground One, this assertion is unavailing.

The flaw in this allegation is that it assumes that the reason why the government declined to file a substantial assistance motion is that Brown exercised his right to go to trial.  However, that premise has been rejected, both at the sentencing hearing and on direct appeal.  See Sentencing Tr. at 78-82; Brown, 521 F. App'x at 780-82.  Prior to the sentencing hearing, Brown sought to compel the government to file a substantial assistance motion, arguing that the government was refusing to file the motion as a penalty for Brown exercising his right to go to trial.  See Motion to Compel at 5-6.  The Court denied the motion, finding that there was "no evidence whatsoever that the reason motivating the prosecutor or the prosecution was the defendant's decision to go to trial." Sentencing Tr. at 78.  In doing so, the Court found that the government validly withheld a substantial assistance motion because Brown committed perjury at trial.  Id. at 81.  On direct appeal, the Eleventh Circuit agreed that the government withheld a substantial assistance motion because Brown gave false testimony at his trial, not because Brown exercised the right to go to trial.  See Brown, 521 F. App'x at 781-82 ("Particularly in light of Brown's perjury at trial, the district court did not clearly err in finding that Brown had failed to establish that the government was motivated by a constitutionally impermissible reason.").

In fact, counsel might have given inaccurate advice if he had "advise[d] Brown that if he went to trial and testified, the government would likely decline to file a substantial assistance motion."  Motion to Vacate at 8.  Nothing in the rules governing substantial assistance – i.e., 18 U.S.C. § 3553(e), U.S.S.G. § 5K1.1, or Rule 35(b), Federal Rules of Criminal Procedure – diminishes the government's discretion to file a substantial assistance motion merely because a defendant elects to go to trial.  Due process may even prevent the government from refusing to file a substantial assistance motion simply because a defendant exercises the constitutional right to go to trial, although that has not been settled in the Eleventh Circuit.  See United States v. Dorsey, 512 F.3d 1321, 1324-25 (11th Cir. 2008) (collecting cases from the Third, Ninth, and Tenth Circuit Courts of Appeals), vacated and superseded, 554 F.3d 958 (11th Cir. 2009) (declining to reach whether penalizing the defendant's decision to go to trial represents an unconstitutional motive for withholding a substantial assistance motion).  If, as Brown alleges, Martinez failed to advise Brown that going to trial would cost him a substantial assistance motion, Martinez was reasonable not to do so because the rules do not support such advice.

Moreover, Brown has failed to point to evidence even suggesting a reasonable probability that Brown would have pled guilty even had Martinez advised him that going to trial meant he was unlikely to receive a substantial assistance motion.  For the reasons discussed under Ground One, the record reflects that Brown was dissatisfied with the government's plea offer, was unwilling to plead guilty to any felonies, and was determined to try his case.  Because even a substantial assistance reduction would not have allowed Brown to avoid having a felony conviction, there is not a reasonable probability Brown would have accepted the plea offer had Martinez advised him that going to trial would

20

cost him a substantial assistance reduction.  Accordingly, relief on Ground Two is due to be denied.

### III.    Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Brown seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). To make this substantial showing, Brown "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby

**ORDERED**:

1.  Petitioner Henry Lee Brown's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255 (Doc. 1, Motion to Vacate) is **DENIED**.

2.  The Clerk shall enter judgment in favor of the United States and against Henry Lee Brown, and close the file.

3.  If Brown appeals the denial of the petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 14th day of October, 2016.

MARCIA MORALES HOWARD
United States District Judge

Lc19

Copies:

Counsel of Record

Petitioner Henry Lee Brown